[No. 13664. Department One. October 10, 1917.]

FRED V. FISHER, *as Executor etc., Respondent,* v.

G. H. CLARK *et al., Appellants.*[1]

LANDLORD AND TENANT—RENT—ACTIONS—DEFAULT IN PAYMENT—EVIDENCE—SUFFICIENCY. Under a lease providing for the making of certain improvements by the lessee as a part of the consideration of the lease, and that they be made promptly, and in case of failure to do so that the lessee should pay rent at $200 per month for the first seven months of the term, the lessee is in default where, after making a contract for the improvements, he failed to pay the contractor and work ceased, and four months after making the lease he failed to pay the accumulated rent within three days after demand made therefor.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered June 27, 1916, upon findings

[1]Reported in 167 Pac. 1103.

in favor of the plaintiff, in an action for rent, tried to the court. Affirmed.

*Skuse & Morrill*, for appellants.

*Samuel R. Stern*, for respondent.

MAIN, J.—This action was instituted to recover the sum of $475 rent, claimed to be due under a written lease made and entered into between Theodore Fisher and Fred Fisher, lessors, and the defendants, G. H. Clark and wife, lessees. The complaint demanded cancellation of the lease, restitution of the premises, and double the damages. After the issues were framed, the cause was tried to the court without a jury, and resulted in a judgment in favor of the plaintiffs in the sum of $950, this being double the amount of rent due. From this judgment, the appeal is prosecuted.

The facts are these: The two upper stories of the property, located at 921 First avenue, Spokane, Washington, were, on October 27, 1915, leased to Clark and wife for a period of two years from June 1, 1916, at a rental of $200 per month, payable in advance on the first day of each and every month. The second paragraph of the lease is as follows:

"As a further condition and part consideration of said letting, the parties of the second part herewith agree to install in said building sixty-four (64) basins or lavatories known by the Standard Sanitary Manufacturing Company Catalog number of P-558, and having Self-Closing Aqua Basin cocks N. P. Traps and H. P. Angle Valved Supply, and, in addition thereto, two bath tubs all properly installed and completed so as to be in complete working order; and said parties of the second part further agree to install a heater, which shall be sufficient to at all times, during the duration of this tenancy, to supply hot water for all the rooms in said building, especially during the months when such hot water cannot be otherwise secured; and said second parties further agree and all of the foregoing and following as part consideration of this letting, to kalsomine all the

rooms and halls, and varnish the woodwork thereof, and to
have all of the said work done in a proper and first class man-
ner, and to commence the making of said repairs, and to
commence to install what is herein provided to be installed,
not later than November 15th, 1915, and that all such im-
provements shall become the property of the parties of the
first part."

By this paragraph, the lessees were to install in the prem-
ises sixty-four (64) basins, or lavatories, two bath tubs, and
a heater. Paragraph V of the lease is as follows:

"The parties of the first part further agree that, in the
event that the said second parties shall install the plumbing,
and do the work hereinbefore provided to be done, and shall
carry out their part of this agreement properly and
promptly, then, and in that event, the parties of the first
part will permit the parties of the second part to occupy
the above described premises from November 1st, 1915, until
June 1st, 1916, free from all rent; and, if the parties of the
second part shall fail to carry out the terms of this agree-
ment as hereinbefore and hereinafter provided, then they
shall pay to the parties of the first part rental at the rate
of $200 per month for the seven months hereinbefore pro-
vided from November 1st, 1915, to June 1st, 1916."

It is here provided that, if the lessees should install the
plumbing and cause the other work provided for to be done
"properly and promptly," then they should occupy the prem-
ises rent free from November 1, 1915, until June 1, 1916.
It is further therein provided that, if the lessees shall fail
to carry out the terms of the agreement as to the improve-
ments, then rent should be paid at the rate of $200 per
month from November 1, 1915, to June 1, 1916. After
the execution of this lease, the lessees went into possession
of the premises, which were to be used as a lodging or room-
ing house. On November 18, 1915, Mr. Clark entered into
a contract with one P. J. Coff for the installation of the
basins, or lavatories, and the heater. Thereafter, Coff en-
tered upon the performance of the contract, and, after pro-

ceeding with it for a time, ceased work because he did not receive the payments in the amount and at the time specified in the contract. On the 4th day of February, 1916, Clark and wife sold the rooming house and the furniture therein to J. A. Barnes, who went into possession thereof. On February 9, 1916, notice was served demanding that rent in the sum of $475 be paid three days after the service of the notice. This was the amount of rent that had accumulated at the rate specified in the contract from the time possession was taken until the service of the notice. The rent was not paid, a writ of restitution was issued, and Barnes and wife, who were then in possession, surrendered the same under the writ.

The controlling question is one of fact, and is whether the appellants, at the time of the commencement of the action, were so far in default in carrying out the provisions of the lease as to entitle the respondents to a cancellation thereof and a recovery for double the amount of the rent due. It is not claimed that the trial court erred in doubling the rent under Rem. Code, § 827, if the evidence shows that Clark and wife had not proceeded with reasonable diligence in the performance of the terms of the contract. The making of the improvements provided for was expressly made a part of the consideration for the lease, and it was further provided that they should be made promptly. The trial court found:

"That said defendants Clark did not live up to the terms of said contract and failed to promptly and properly install said plumbing, and, on the contrary, did not install said plumbing, and that the same was not installed because of a failure on their part to pay the contractor employed by them to install said plumbing, and that they further failed and neglected to kalsomine the said premises as agreed, or to install the heater therein as agreed."

This finding is clearly supported by the preponderance of the evidence. The lessees had failed to make the payment upon the contract with Coff as required, and, for that reason,

13—98 WASH.

the work ceased, and they thereafter sold the rooming house and surrendered possession to their transferee.

The judgment will be affirmed.

ELLIS, C. J., CHADWICK, MORRIS, and FULLERTON, JJ., concur.